UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DINNER TABLE ACTION, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>SCHNEIDER, *et al.*,<br><br>          Defendants, | Case No. 1:24-cv-00430-KFW |

**MOTION TO INTERVENE AS DEFENDANTS ON BEHALF OF EQUALCITIZENS, CARA MCCORMICK, PETER MCCORMICK, AND RICHARD BENNETT**

Pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, EqualCitizens, Cara McCormick, Peter McCormick, and Richard Bennett ("Movants") move to intervene as of right as party-defendants. In the alternative, Movants move to permissively intervene under Rule 24(b). This Motion is supported by the incorporated memorandum of law and accompanying declarations. Movants have also attached their proposed answer to be filed in the event that intervention is granted. Defendants do not oppose this Motion. Plaintiffs oppose intervention.

1

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

State Senator Richard ("Rick") Bennett, citizens' initiative proponents Cara and Peter McCormick, and the fair election organization EqualCitizens respectfully move to intervene in this Action as Defendants. Movants are the primary supporters and key beneficiaries of the Maine campaign-finance law that Plaintiffs seek to invalidate. Movants' participation is crucial because they have different interests from the State and plan to defend the law on different grounds, which will allow fulsome ventilation of the crucial constitutional issues before this Court, aiding both this Court and subsequent appellate courts. The State does not oppose this motion.

Movants satisfy the criteria for intervention as-of-right. This Motion comes at a very early stage and will prejudice no party. Senator Bennett is deeply impacted by the distortion of both the campaign and legislative processes as a result of unregulated SuperPAC contributions. In his experience, these contributions hurt candidates like him who campaign under the Maine Clean Elections Act, while creating an appearance of corruption and undermining trust in government. Cara and Peter McCormick proposed the citizens' initiative and spent hundreds of hours campaigning for it. Their unique, on-the-ground interest as Maine voters fighting for clean elections will provide this Court with an essential perspective that cannot be replicated by the State. EqualCitizens is a respected, nonpartisan organization fighting for SuperPAC contribution limits, and its role as a proponent of the citizen's initiative also warrants intervention as-of-right.

At a minimum, the Court should grant permissive intervention under Rule 24(b). Courts permit state representatives, ballot proponents, and public advocacy organizations to participate in litigation under the flexible standard for permissive intervention. *See, e.g.*, *Ass'n to Pres. & Protect Loc. Livelihoods v. Town of Bar Harbor*, No. 22-CV-00416, 2023 WL 2273949, at *3 (D. Me. Feb. 28, 2023); *infra* pp. 8–10. Intervention is particularly appropriate here, where the People of Maine adopted restrictions on SuperPACs through a citizens' initiative *after* the Maine Legislature

2

refused to act.[1] Movants more closely represent the views of the voters supporting the initiative than the State and allowing Movants' participation will provide this Court with the widest array of arguments to assist its decision on the pivotal question before it.

## BACKGROUND

Maine voters approved a citizens' initiative titled the "Act to Limit Contributions to Political Action Committees That Make Independent Expenditures" (the "Act") in November 2024. Compl. ¶ 21. The Act is designed to "prohibit any individual or organization from contributing more than $5,000 in a calendar year to a political action committee for the purpose of making independent expenditures," and requires disclosure of the names of individuals contributing to such committees. Maine Citizen's Guide to the Referendum Election at 6 (Nov. 5, 2024) (quoted at Compl. ¶ 23). Plaintiffs, who are Political Action Committees (PACs) and associated individuals, filed suit on December 13, 2024, to enjoin the Act and declare it invalid.

Senator Bennett represents Maine's eighteenth Senate District. Ex. 1, Decl. of Richard Bennett ¶ 1. As both a candidate and representative, he has been significantly impacted by unregulated SuperPAC contributions, which prevent local voters from hearing from local candidates about local issues. This undermines trust in government, including trust in state legislators. It also undermines the Maine Clean Elections Act, which provides legislators, including Senator Bennett, with an alternative pathway for funding elections without the appearance of corruption. *Id*. ¶¶ 7–8.

Cara and Peter McCormick are long-time Maine residents who are deeply involved in advocating for fair elections. Ex. 2, Decl. of Cara McCormick ¶ 1; Ex. 3, Decl. of Peter McCormick ¶ 1. They proposed the citizens' initiative and then worked tirelessly to obtain public support,

---

[1] Summary of LD 2232, "An Act to Limit Contributions to Political Action Committees That Make Independent Expenditures," https://legislature.maine.gov/LawMakerWeb/summary.asp?paper=IB0005&SessionID=15.

including collecting over 800 signatures in a single day. They knocked on doors, wrote letters to the editor, enlisted student volunteers, and testified at a legislative hearing—ultimately leading to the largest number of votes for a citizens' initiative in Maine's history. *Id.* ¶¶ 7, 11; *id.* ¶¶ 7, 11.

EqualCitizens is a nonpartisan organization dedicated to equal representation and equal access to the voting booth. Ex. 4, Decl. of Lawrence Lessig ¶ 2. It advocates against corruption and the appearance of corruption that results from unfettered Super PAC contributions. *Id.* ¶¶ 6, 9. EqualCitizens has supported legislative efforts around the country to place reasonable limits on SuperPAC contributions, and it is a major supporter of the Maine citizens' initiative, gathering signatures to get the measure on the ballot. *Id.* ¶ 7. If Plaintiffs succeed, EqualCitizens will divert resources to combat corruption in Maine that it would otherwise spend elsewhere. *Id.* ¶ 13.

## ARGUMENT

### I. The Court Should Grant Intervention As-Of-Right.

Courts must permit intervention as-of-right where an applicant demonstrates (1) "the timeliness" of their motion; (2) the "existence of an interest" relating to the "basis of the pending action"; (3) "a realistic threat that the disposition of the action" will impede the "ability to protect that interest"; and (4) "the lack of adequate representation" by "any existing party." *In re Efron*, 746 F.3d 30, 35 (1st Cir. 2014) (quotation marks omitted). Movants satisfy each requirement.

### A. Intervention Is Timely.

Plaintiffs commenced this action on December 13, 2024—a little over one month ago— and "no discovery has taken place." *Pharm. Rsch. & Mfrs. of Am. v. Comm'r, Maine Dep't of Hum. Servs.*, No. 00-CV-157-BH, 2000 WL 1844663, at *1 (D. Me. Dec. 14, 2000) (intervention timely 3 months after complaint filed); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 46 (D. Mass. 2015) (intervention timely five months after complaint filed), *aff'd*, 807 F.3d 472 (1st Cir. 2015). The very early stage of this litigation is

"highly relevant" and militates against finding prejudice. *See R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). Indeed, Movants commit to filing briefing on the same schedule as the State, preventing any possible prejudice.

   **B.**  **Movants Have Protectable Interests Directly Impacted By This Action.**

  Movants have a crucial interest in "the subject of the action." *In re Efron*, 746 F.3d at 34. The First Circuit has "rejected [a] narrow reading" of this requirement, which is not limited to "specific piece[s] of property" or discrete statutory rights. *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999). Intervenors must simply demonstrate a "direct" and "sufficiently close relationship to the dispute." *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989) (quotation marks omitted). That standard is met here.

  Senator Bennett is an elected representative and campaigns for office under the Maine Clean Elections Act. Bennett Decl. ¶¶ 3–4, 10. He thus has a deeply personal interest in ensuring that Maine citizens trust the government to represent local interests. These interests are thwarted by access to unfettered SuperPAC contributions, which lead to the appearance of corruption and undermine trust in elected representatives. Senator Bennett has firsthand experience with the harm unfettered SuperPAC contributions do to representative government. In Senator Bennett's experience, access to SuperPAC contributions causes candidates—and indeed Senator Bennett's rivals—to avoid campaigning under the Clean Elections framework. *Id*. ¶¶ 9–10. As a result, local races center on appeasing anonymous SuperPAC donors. Unfettered contributions also impoverish debate in the legislature, where representatives face pressure to advance SuperPAC interests—contrary to their duty to advocate for their constituents. *Id*. ¶¶ 7–8.

  Cara and Peter McCormick have a personal interest in this litigation after proposing the initiative and spending hundreds of hours advocating for it. Cara McCormick Decl. ¶ 13; Peter McCormick Decl. ¶ 13. As both advocates and citizens, they have a direct interest in a political

5

system free from the appearance of corruption created by unregulated donations to SuperPACs. And they have witnessed candidates for whom they would prefer to vote decide not to run because of appearance of corrupt SuperPAC support for opponents. Cara and Peter McCormick represent the interests of the Maine voters who adopted the citizens' initiative by an overwhelming margin, after the State Legislature refused to enact similar legislation. *Id*. ¶¶ 11–13; *id*. ¶¶ 11–13.

EqualCitizens likewise has a direct interest as the standard bearer for the campaign to limit SuperPAC contributions, defending similar efforts throughout the country, including in the First Circuit. Lessig Decl. ¶ 6. A critical part of that mission is establishing the legal proposition that, based on the original meaning of the First Amendment, SuperPAC contributions can corrupt elections and create the appearance of corruption by encouraging officials to do something in exchange for SuperPAC contributions—all under the cover of anonymity. The Act, which movant undertook great efforts to support, represents the culmination of EqualCitizens' activities in Maine. *Id*. ¶ 9. If Plaintiffs prevail, their stated desire to receive donations well in excess of the Act's contribution limits, *e.g.*, Compl. ¶¶ 28–31, would frustrate EqualCitizens' mission, causing it to divert significant resources to combat corruption in Maine—resources that EqualCitizens would otherwise put towards campaign finance reform throughout the country, Lessig Decl. ¶ 13. This is a legally protected interest that gives rise to associational standing. *See, e.g.*, *Town of Milton v. F.A.A.*, 87 F.4th 91, 99 (1st Cir. 2023) (finding Article III standing based on "diverted resources").

Movants—who individually benefit from elections free from corruption or the appearance of corruption as candidates, voters, and advocates—are thus the Act's "direct and intended beneficiaries." *Verizon New England v. Maine Pub. Utils. Comm'n*, 229 F.R.D. 335, 337 (D. Me. 2005) (such parties satisfied "prongs two and three" of First Circuit's four-part test). Movants stand to "gain or lose by the direct legal operation" of a judgment and thus should be permitted to

intervene. *Sierra Club v. McCarthy*, 308 F.R.D. 9, 11 (D.D.C. 2015) (quotation marks omitted).

### C. Maine May Not Adequately Represent Movants' Interests.

Movants also satisfy the Rule 24(a) inadequacy requirement. They have "an adequate explanation as to why" the typical presumption that the "government will adequately defend its actions" does not apply. *State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001). That presumption is not applied "mechanistic[ally]." *Id.* "An intervenor need only show that representation may be inadequate, not that it is inadequate." *Conservation L. Found. of New Eng. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (citation omitted).

Movants' private interests in the citizens' initiative—Bennett's personal stake in participating in clean elections, Cara and Peter McCormick's personal advocacy, and EqualCitizens' mission to promote clean elections—all differ in kind from an "undifferentiated, generalized interest" in a state's defense of its laws. *Ass'n to Pres. & Protect Loc. Livelihoods*, 2023 WL 2273949, at *3 & n.3 (granting as-of-right intervention to principal proponent of zoning ordinance with a "personal stake"); *see B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006) (explaining that intervenors can overcome a presumption of adequacy by asserting that "interests are sufficiently different in kind or degree from those of the named party").

Two points illustrate why the State may not adequately represent those discrete interests.

*First*, Movants seek an unqualified rejection of Plaintiff's constitutional arguments to resolve the important question presented and prevent future litigation. The State's interest, however, is "merely . . . to defend the present suit." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016). The State has thus raised numerous non-merits defenses, including subject-matter jurisdiction, justiciability, ripeness, waiver, and exhaustion, any of which may preclude a decision on the merits. *See* Answer at 11.

The potential conflict between the State's interest in resolving this case on non-merits

grounds, and Movants' interest in obtaining a final resolution of the First Amendment question, warrant intervention. *See Wal-Mart Stores*, 834 F.3d at 569 (affirming intervention as-of-right based on this potential conflict); *McDonough v. City of Portland*, No. 2:15-CV-00153, 2015 WL 3755289, at *3 (D. Me. June 16, 2015) (granting as-of-right intervention and recognizing the government must consider "external institutional and political pressure"). Courts regularly grant intervention where, as here, the State must "weigh countervailing factors," which may cause it to "shirk" a full-throated merits defense. *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 70 (D. Me. 2007) (granting as of right intervention alongside government based on private entity's "narrower interest[s]"). That concern is compounded here, where the State is called upon to defend a citizens' initiative that the legislature earlier refused to enact, and that the Governor did not endorse.[2]

*Second*, Movants intend to defend the law on constitutional grounds that the State will not advance. Specifically, Movants intend to defend the law in part based on the original public meaning of the First Amendment. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 359 (1995) (Thomas, J. concurring) ("[T]he meaning of the Constitution 'must necessarily depend on the words of the constitution [and] the meaning and intention of the convention which framed and proposed it for adoption and ratification.'") (citations omitted). The Supreme Court's approach to constitutional interpretation "obviously calls for the argument to be made." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 476 (1st Cir. 2015). The Maine Attorney General's office has represented to Movants, however, that the State does not intend to present an originalist defense based on the meaning of the First Amendment Speech and Press Clauses at the time of the Founding. Lessig Decl. ¶ 11.

---

[2] Off. of Gov. Janet T. Mills, *On Tuesday, I'll Be Voting Yes on Questions 2, 3, and 4* (Nov. 1, 2024), https://www.maine.gov/governor/mills/news/radio_address/tuesday-ill-be-voting-yes-questions-2-3-and-4-2024-11-01.

8

This is not merely a dispute about whether to make an "additional" argument. *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562 (1st Cir. 2021). Rather, it presents a conflict regarding which "line of defense" to adopt—defeating the presumption of adequate representation by the State. *Cotter v. Massachusetts Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 36 (1st Cir. 2000). Movants' originalist defense is a critical aspect of the legal issue before this Court. And the State will not fully ventilate it. *Supra* p. 7. That representational gap runs counter to Movants' interest in laying the best possible legal defense for the Act. And it is compounded by the "adverse impact of stare decisis," which will build up against Movants if this Court and appellate courts render judgments without an originalist defense squarely before them. *See Int'l Paper Co. v. Inhabitants of Town of Jay*, 887 F.2d 338, 344 (1st Cir. 1989). These conflicts between Movants' approach and the State's approach are more than sufficient to demonstrate that the State's "representation *may* be inadequate." *McDonough*, 2015 WL 3755289, at *4 (emphasis in original).

## II. In The Alternative, The Court Should Grant Permissive Intervention.

In the alternative, the Court should grant permissive intervention. Upon a "timely motion," this Court may permit anyone to intervene that "has a claim or defense that shares with the main action a common question of law or fact," considering any undue "delay or prejudice" to the existing parties. Fed. R. Civ. P. 24(b)(1)(B), (b)(3). This is a "wholly discretionary" inquiry. *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 290 F.R.D. 11, 14 (D. Mass. 2013).

Permissive intervention is warranted here. There can be no dispute that Movants plan to raise defenses that share common questions of law with the "main action"; Movants' proposed Answer satisfies that requirement. *See Kobach v. U.S. Election Assistance Com'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (requirement met by intervenors' "proposed answers denying the legal assertions made by Plaintiffs in their complaint"). And this motion is timely: It was filed little more than a month after Plaintiffs' Complaint, "giving Plaintiffs notice

9

and opportunity as to their arguments in opposition." *Id.* at *3 (granting permissive intervention 2.5 months after complaint). Nor will granting the motion cause delay. Movants are prepared to file an opposition to Plaintiffs' Motion for a Permanent Injunction on the same timetable as Defendants, which will allow Plaintiffs to address Movants' arguments on reply. *See Public Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020) (granting intervention where proposed intervenor agreed to adhere to briefing schedule). There is no possible prejudice in these circumstances. *See United States v. Wheeler*, No. 23-CV-00424, 2024 WL 5125895, at *2 (D. Me. Dec. 16, 2024) (intervention in the "early stages of litigation" diminished prejudice).

Permissive intervention is warranted, moreover, for at least three additional reasons.

*First*, this case presents a pivotal First Amendment question that will be carefully scrutinized by this Court, the First Circuit, and potentially the U.S. Supreme Court. This Court would greatly benefit from the broadest possible array of arguments and viewpoints. Allowing Movants to participate as intervenors will greatly assist this Court's resolution of the question presented, which will in turn assist appellate court review. *See Grutter v. Bollinger*, 188 F.3d 394, 401 (6th Cir. 1999) (reversing denial of intervention based on concerns that defendants would not "present particular defenses of the contested race-conscious admissions policies").

As described above, Movants intend to raise constitutional grounds that Defendants will not address, including presenting an originalist defense of the Act. Movants also intend to defend this case primarily on the merits, rather than focusing on the threshold grounds for dismissal cited by the State, and thus plan to pursue a different litigation strategy that will provide this Court with more complete briefing. Movants' interests are therefore "distinct" from those of the State, and this Court should accordingly permit intervention. *See Public Int. Legal Found.*, 463 F. Supp. 3d at 800 (for "permissive intervention," intervenors' interest "only needs to be 'distinct'"); *Kobach*,

10

2013 WL 6511874, at *4 (granting permissive intervention because "Defendants have a duty to represent the public interest, which may diverge from the private interest of" intervenors).

*Second*, Movants played a major role in advocating for adoption of the Act. This "expertise and personal experience" make them particularly "helpful in fully developing the case." *Daggett*, 172 F.3d at 113 (explaining it is "reasonable" to consider similar factors); *see Prete v. Bradbury*, 438 F.3d 949, 952 (9th Cir. 2006) (affirming grant of intervention by "major supporter" of state ballot initiative in constitutional challenge). Cara and Peter McCormick proposed the initiative, gained the necessary signatures, and advocated for the initiative across Maine, and thus can explain the serious impact on Maine citizens, including their trust in government, if the initiative is invalidated. Senator Bennett testified in favor of the initiative, and EqualCitizens was likewise a major proponent of the ballot initiative, providing this Court with important insight.

*Third*, the resolution of this action would "directly and substantially" impact Movants. *League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018). Senator Bennett campaigns under the Maine Clean Elections Act. Unregulated donations to Super PACs undermine the integrity of that system and create an appearance of corruption. It will likewise directly and substantially impact Cara and Peter McCormick and EqualCitizens, who have spent significant time advocating for the Act, and who will have to divert resources from other projects to fight corruption in Maine if the Act is invalidated. *See Pub. Int. Legal Found.*, 463 F. Supp. 3d at 799 (E.D. Mich. 2020) (permitting non-profit to intervene in defense of voter law); *Kobach*, 2013 WL 6511874, at *5 (permitting non-profit and state senator to intervene in defense of vote-by-mail statute). This Court should accordingly permit intervention.

## CONCLUSION

For the foregoing reasons, this Court should grant the motion to intervene.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ David M. Kallin* |
|  | David M. Kallin, Bar No. 4558 |
|  | Adam R. Cote, Bar No. 9213 |
|  | Drummond Woodsum |
|  | 84 Marginal Way, Suite 600 |
|  | Portland, ME 04101-2480 |
|  | (207) 772-1941 |
|  | dkallin@dwmlaw.com |
|  | acote@dwmlaw.com |
|  |  |
|  | Neal Kumar Katyal* |
|  | Ezra P. Louvis* |
|  | HOGAN LOVELLS US LLP |
|  | 555 Thirteenth Street N.W. |
|  | Washington, D.C. 20004 |
|  | Tel: (202) 637-5600 |
|  | neal.katyal@hoganlovells.com |
|  |  |
|  | * *pro hac vice* pending |
|  |  |
|  | *Counsel for Richard Bennett, Cara McCormick, Peter McCormick, and EqualCitizens* |
| January 24, 2025 |  |