UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DINNER TABLE ACTION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM J. SCHNEIDER, *et al.*, <br><br> Defendants. | Docket No. 1:24-cv-00430-KFW |

**DECLARATION OF LAWRENCE LESSIG**

1. My name is Lawrence Lessig and I am the founder of the Equal Citizens Foundation ("EqualCitizens"). I am also the Roy L. Furman Professor of Law and Leadership at Harvard Law School.

2. EqualCitizens is a non-partisan and non-profit 501(c)(3) corporation dedicated to reforms that will secure political equality. It has litigated to advance Electoral College reform, as well as to challenge the corrupting dependence of representatives on campaign contributions.

3. A major focus of EqualCitizens' efforts is a campaign to keep unlimited contributions to independent political action committees out of politics. The genesis of that campaign is the D.C. Circuit's decision in *SpeechNow v. F.E.C.*, 599 F.3d 686 (2010), which held that contributions to independent-expenditure-only committees could not, as a matter of law, pose a risk of corruption, and was thus the genesis of "SuperPACs."

4. EqualCitizens believes that the SuperPACs-cannot-corrupt theory is logically flawed and deeply inconsistent with political reality. SuperPAC corruption is not just possible, but real. Indeed, federal prosecutors have charged corruption cases based on favors offered in exchange for SuperPAC contributions under the cover of anonymity. Unregulated donations to SuperPACs can

1

lead to both quid-pro-quo corruption and the appearance of corruption by driving candidates and elected officials to make both overt and subtle shifts in their policies and decisions in direct response to the preferences of SuperPAC donors.

5. EqualCitizens also believes that unlimited contributions to independent political action committees cause other harms, including the defeat of Maine's Clean Election system. For almost 30 years, Maine has tried to assure that its representatives are not dependent on money from large donors. SuperPACs weaken that system, by forcing candidates to opt out of the Clean Election system, to assure their competitiveness. This ultimately leads many Maine citizens to bow out of the political process altogether, either by refusing to vote in elections that they view as corrupt, or by refusing to participate in the political process where they believe they can have no voice.

6. This cannot be what the Framers of our democracy intended, nor what their First Amendment requires. The original meaning of the First Amendment permits the regulation of SuperPAC contributions to prevent quid-pro-quo corruption and the appearance of such corruption, and for other reasons, including to promote a representative democracy that is "dependent on the people alone," Federalist 52, rather than on SuperPAC donors. To that end, EqualCitizens has sponsored efforts in Massachusetts challenging SuperPAC contributions. *See Hermann v. Attorney General,* 208 N.E.3d 727 (Mass. 2023). EqualCitizens has also provided counsel to citizens challenging the refusal to enforce laws limiting large contributions to independent political action committees in Alaska. *See Alaska Pub. Offs. Comm'n v. Patrick*, 494 P.3d 53 (Alaska 2021).

7. In August 2023, EqualCitizens began working with citizens in Maine to organize an initiative to regulate contributions to SuperPACs that operate in Maine elections. EqualCitizens coordinated with Maine citizens to increase awareness of the initiative and canvass voters.

8. As a result of these efforts, the initiative, titled An Act to Limit Contributions to Political Action Committees That Make Independent Expenditures," was transmitted to the Maine Legislature on February 27, 2024. The Maine legislature refused to act, and the initiative was later listed as Question 1 on the November 5, 2024 election ballot. Question 1 later passed with 74.91% of the vote.

9. The passage of Question 1 is the culmination of EqualCitizens' efforts in the State of Maine. It is a tangible step to limit the risk of SuperPAC corruption at the core of EqualCitizens' organizational mission, including quid-pro-quo corruption and the appearance of such corruption as a result of unregulated SuperPAC donations. Should Maine's contribution limits be invalidated, it will force EqualCitizens to spend money and other resources defending against corruption in Maine.

10. This litigation plays a critical role in EqualCitizens' mission, not only because it calls the validity of Maine's contribution limits into question, but also because it presents an opportunity to address the SuperPACs-cannot-corrupt theory head on. Respecting the diversity of views on the Supreme Court, EqualCitizens seeks to present an originalist defense of Question 1. The full ventilation of that issue is an essential part of its broader effort to combat SuperPAC-induced corruption.

11. The Maine Attorney General's office has represented to Movants that the State does not intend to present an originalist defense of Question 1 based on the meaning of the First Amendment Speech and Press Clauses at the time of the Founding. Given the Supreme Court's recent jurisprudence, which includes originalist methods of constitutional interpretation, EqualCitizens believes this is an essential ground to put forward in defense of Question 1. EqualCitizens seeks to participate in this lawsuit as an intervenor so it can raise this important defense of the Act, which

it understands the State does not intend to make, and so it can carry out its mission of regulating SuperPAC donations to combat corruption.

12. Furthermore, the State has made clear that it will advance non-merits arguments in this litigation. Should the State prevail on such grounds, it will force EqualCitizens to expend additional resources in other states to obtain rulings on the merits that conflict with the D.C. Circuit's decision in *SpeechNow*. EqualCitizens believes that *SpeechNow* was wrongly decided, and considers it the highest priority to ensure that a federal court of appeals has the opportunity and ability to consider that question on the merits.

13. EqualCitizens will suffer immediate, individual injury if Plaintiffs prevail. If Plaintiffs obtain an injunction, EqualCitizens will divert resources to renewed efforts to regulate SuperPACs in Maine, as well as other efforts to combat corruption and the appearance of corruption in Maine. EqualCitizens would otherwise devote these resources to its core mission of ending pay-to-play politics across the country. This diversion of resources will be certain, immediate, and substantial, qualifying as a concrete injury-in-fact and demonstrating EqualCitizens' personal interest in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 24th day of January, 2025.

                                                  /s *Lawrence Lessig*
                                                  Lawrence Lessig