UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DINNER TABLE ACTION, FOR OUR FUTURE, and ALEX TITCOMB, <br><br> *Plaintiffs.* <br><br> v. <br><br> WILLIAM J. SCHNEIDER, in his official capacity as Chairman of the Maine Commission on Governmental Ethics and Election Practices; DAVID R. HASTINGS III, in his official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; SARAH E. LECLAIRE, in her official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; DENNIS MARBLE, in his official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; BETH N. AHEARN, in her official capacity as a Member of the Maine Commission on Governmental Ethics and Election Practices; and AARON M. FREY, in his official capacity as Attorney General of Maine, <br><br> *Defendants.* | Case No. 24-cv-00430-KFW <br><br><br> Mag. Judge Karen Frink Wolf |

**PLAINTIFFS' MEMORANDUM OPPOSING MOTION TO INTERVENE**

**INTRODUCTION**

Putative Intervenors, the first of which is a national organization not even located in Maine,

desire to intervene because they fear the state-actor defendants, including the Attorney General,

will present *too robust* of a defense—by arguing "non-merits defenses" when defending the law—

and when defending on the merits may not assert "an originalist defense based on the meaning of

#17840377v2

the First Amendment Speech and Press Clauses at the time of the Founding." However, Putative Intervenors have only a generalized interest in defending the law, and the state-actor defendants are presumptively more than adequate to defend the law. Putative Intervenors admittedly desire to advance only a single, narrow legal argument in the hopes of getting the Supreme Court to reverse existing law. Other amici curiae have been permitted to file briefs in this action already, which is the proper path for a non-party to present limited, long-shot legal arguments. Intervention is unwarranted and unnecessary.

Intervention is also untimely. This is a fast-moving injunctive matter. Plaintiffs have already filed their motion/trial brief. Defendants' brief is due on February 14, the same day this response—which is being filed early—is due. Plaintiffs' reply is due two weeks later. The parties are on track for a limited-to-no evidence hearing in March, which would allow the Court to decide this matter prior to expiration of the defendants' agreed reprieve on enforcement. Allowing intervention opens the door to additional discovery and delay. Accordingly, intervention should be denied, both as of right and permissively. *Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556 (1st Cir. 2021).

## ARGUMENT

### I.    Intervention as of Right under Rule 24(a)(2) is unavailable.

Pursuant to Federal Rule of Evidence 24(a)(2),

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In order to intervene as of right under Rule 24(a)(2), an entity seeking to intervene "must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the

action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest." *Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). "Each of these requirements must be fulfilled; failure to satisfy any one of them defeats intervention as of right." *Id.* at 51; *see Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).

### A.    Putative Intervenors assert only a generalized, undifferentiated interest in the enforcement of a state law.

The motion to intervene as of right should be denied because only the State has a significant, protectable interest at stake in this litigation. A proposed intervenor must at least show that it has a "significantly protectable interest" that is "direct, not contingent," *Patch*, 136 F.3d at 205. "It is settled beyond peradventure . . . that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *Id.* That principle is dispositive here. *See id.*

EqualCitizens[1] is simply an out-of-state public interest group that advocates in opposition to the First Amendment. EqualCitizens' goal is to reduce election-related political speech. The individual attempted intervenors are political activists and an elected official desire to silence others' political speech, particularly those with differing views who may "drown out" their own speech. As such, nothing significantly differentiates them from any other group or individual who wants to see less election-related speech or limitations placed on superPACs. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 308 F.R.D. 39, 47 (D. Mass. 2015).

Putative Intervenors' asserted interests are weaker even than the interest rejected by the First Circuit in *Patch* as inadequate to support intervention as of right. In that case, the proposed

---

[1] Although unclear from the motion, EqualCitizens is one of two related organizations. According to their shared website, one entity is Equal Citizens Foundation (with a space), a 501(c)(3) entity. The second is EqualCitizens.US (without a space), a 501(c)(4) entity. A declaration attached to the motion indicates that Equal Citizens Foundation alone is the attempted intervenor.

2

intervenors—a citizens' group of electricity consumers—asserted an interest in the case because it would affect their ability to obtain lower utility rates. *Patch*, 136 F.3d at 203-04. The First Circuit found that this purported interest "operates at too high a level of generality," because every consumer had an interest in lower electricity rates. *Id.* at 205. The Court noted that the ongoing litigation did not "directly threaten[] an economic right or benefit presently enjoyed by" the proposed intervenors. *Id.* Here, the Putative Intervenors do not assert any right or benefit unique to them—only the desire that their preferred policies be implemented or that this case serve as a vehicle for advocacy at the U.S. Supreme Court. This, of course, could be asserted by anyone who opposes superPACs—as evidenced by EqualCitizens being the lead intervenor. It is a Massachusetts based organization with no claimed ties to Maine that appears to have only one employee. It is here only for the fight. Nor does state senator Richard Bennett's status as a legislator grant him special standing to defend a law. *Raines v. Byrd*, 521 U.S. 811 (1997). *C.f. Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658 (2019) (a single house of a state legislature lacked standing to appeal a redistricting decision).

Accordingly, while the Putative Intervenors are generally interested in the law being challenged—and indeed, for at least Equal Citizens, having litigation over the law occur—theirs "is not a significantly protectable [interest] that warrants intervention." *Students for Fair Admissions*, 308 F.R.D. at 48. The difference between this case and *Daggett v. Comm'n on Governmental Ethics and Election Pracs.*, 172 F.3d 104 (1st Cir. 1999), upon which Putative Intervenors rely, is instructive. In that case, the proposed intervenors asserted a protectable interest because they were "not just any Maine citizens professing an interest in good government: the applicants [would] receive direct funding if the statute is upheld." *Id.* at 110. The First Circuit agreed that the proposed intervenors had a protectable interest because the number of persons who

"could plausibly claim to be in this position" was much narrower "than the citizenry at large." *Id.* Because the "applicants belong[ed] to a small group, quite distinct from the ordinary run of citizens, who could expect to receive direct payments for their campaigns" if the law were upheld, the Court concluded that the interest prong of Rule 24(a)(2) had been satisfied. *Id.* Unlike the intervenors in *Daggett*, the Putative Intervenors are not directly affected in any way by the outcome of this litigation.

> **B.        Putative Intervenors cannot show the State's defense is inadequate.**

The First Circuit has held that intervention is inappropriate in a case nearly identical to this one. *See Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556 (1st Cir. 2021). In that case, the court explained, "[t]he movant-intervenors disagree with the government's strategic and policy choice not to argue that the First Amendment requires the use of a [certain] standard … and that [certain] procedural protections … are required by the Fifth Amendment's Due Process Clause. The movant-intervenors thus requested intervention for the purpose of presenting those constitutional arguments in addition to the government's non-constitutional defenses." *Id.* at 560. Here, Putative Intervenors do not argue that the government will not defend the law on the merits, but that Putative Intervenors want to assert the *same* defense, but with a different emphasis.

"[A] party that seeks to intervene as of right must produce some tangible basis to support a claim of purported inadequacy." *Id.* at 561. "[W]hen the movant seeks to intervene as a defendant alongside a government entity [there is] a rebuttable presumption that the government will defend adequately its action." *Id.* (internal quotation marks removed). "A successful rebuttal requires a strong affirmative showing that the agency (or its members) is not fairly representing the applicants' interests." *Id.* (internal quotation marks removed).

#17840377v2

This showing cannot be made here. "[A] movant-intervenors' interest in making an additional constitutional argument in defense of government action does not render the government's representation inadequate." *Id*. at 562. It does not matter that Putative Intervenors have ambitious goals for this case to reach the Supreme Court. *Id*. ("Nor is perfect identity of motivational interests between the movant-intervenor and the government necessary to a finding of adequate representation.") Putative Intervenors failed to make a strong affirmative showing that the state-actors are not fairly representing the interests of those who want the challenged law defended. To the extent that Putative Intervenors advance any different point of view, an amicus filing would suffice. *Daggett*, 172 F.3d at 112-13.

Furthermore, the constitutional avoidance doctrine weighs against Putative Intervenors' intended strategy to waive non-constitutional defenses. *Victim Rights Law Ctr.*, 988 F.3d at 563. The State's willingness to defend the law on all levels demonstrates adequacy.

## C.    Intervention is untimely.

The Putative Intervenors argue their motion is timely by counting from the date the complaint was filed to claim reasonableness. The problem with this argument is that it ignores that this case has been expedited. The parties have agreed there will be little to no discovery. Plaintiff had already submitted its Motion for a Permanent Injunction / Trial Brief the week before the motion to intervene was filed. The Defendants' opposition is due the same day that this opposition memorandum is due, to which there is a right of reply, meaning that this motion wouldn't be ripe for decision until after that deadline.[2] The parties previously informed the Court of their desire for

---

[2] This opposition is being filed early to avoid any appearance of gamesmanship. And this early filing is occurring even though Attorney Miller has been handing an unrelated TRO/PI matter in Utah which has required briefing, witness preparation and in person court appearances in Utah in both of the last two weeks.

this matter to be tried in March. If intervention is allowed, additional discovery is likely, and the tight schedule the parties have agreed will be in jeopardy.

Additionally, EqualCitizens has been direct in admitting, both in communications in the court and outside the court, that drawing a legal challenge to the resulting law was a primary motive of pushing Question 1. Thus, they should have been prepared to intervene within days of the filing of this case. Instead, they waited six weeks and only moved to intervene after Plaintiffs submitted their primary brief to the court. Under the circumstances and timing of this case, the motion is untimely.

**II.    Permissive Intervention Should Be Denied for Identical Reasons.**

Under Federal Rule of Civil Procedure 24, permissive intervention is allowable when "(1) the applicant's claim or defense and the main action have a question of law or fact in common, (2) the applicant's interests are not adequately represented by an existing party, *and* (3) intervention would not result in undue delay or prejudice to the original parties." *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992) (emphasis in original). Where, as here, intervention as of right is improper "based on the government's adequate representation, the case for permissive intervention diminishes or disappears entirely." *Tutein v. Daley*, 43 F. Supp. 2d 113, 131 (D. Mass. 1999); *see Students for Fair Admissions*, 308 F.R.D. at 51 (declining to allow permissive intervention because, among other reasons, there was no inadequacy of representation). The State can defend on its own. It will defend the law fully. Any argument EqualCitizens and its fellow travelers wish to make can be made by amicus brief. *Rosenfelt*, 988 F.3d at 564.

And just like for intervention as of right, permissive intervention is also untimely. *See Students for Fair Admissions*, 308 F.R.D. at 51 (noting need for the court to consider "whether intervention will prejudice the existing parties or delay the action"). Delay to this action is likely

6

if intervention is successful because there will be additional discovery and additional briefing will likely be needed from Plaintiff.

The motion to intervene cites the reason for intervention is to make and preserve constitutional arguments that they hope will cause the Supreme Court to reverse significant and important precedent. However, this interest can adequately be served through filing an amicus brief. *Rosenfelt*, 988 F.3d at 564. Accordingly, no interest justifies intervention.

## III.    Conclusion

For the foregoing reasons, the Motion to Intervene should be denied.

Dated: February 10, 2025                                Respectfully submitted,

*/s/ Joshua Dunlap*
Joshua D. Dunlap
Pierce Atwood LLP
254 Commercial Street
Merrill's Wharf
Portland, ME 04101
207-791-1100
jdunlap@pierceatwood.com

*Counsel of Record for Plaintiffs*

and

Charles Miller*
(*pro hac vice*)
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., NW
Suite 801
Washington, DC 20036
202-301-9800
cmiller@ifs.org
*Counsel for Plaintiffs*

7

#17840377v2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated below I caused a copy of the foregoing pleading to be filed with the Court's ECF filing system, which will cause an electronic notice to be sent to counsel of record.

Dated:  February 10, 2025

*/s/ Joshua D. Dunlap*
Joshua D. Dunlap
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-791-1100
jdunlap@pierceatwood.com

*Counsel of Record for Plaintiffs*

8

#17840377v2