UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DINNER TABLE ACTION et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM J. SCHNEIDER et al., <br><br> Defendants. | Docket No. 1:24-cv-00430-KFW |

**DECLARATION OF JONATHAN WAYNE**
**(pursuant to 28 U.S.C. § 1746)**

I, Jonathan Wayne, Esq., hereby declare as follows:

1. I am over the age of 18 and reside in Brunswick, Maine.

2. I am the Executive Director of the Maine Commission on Governmental Ethics and Election Practices ("the Commission"). In that capacity, I am also the official custodian of the campaign finance records of the Commission. I direct the day-to-day activities of the six-person staff of the Commission and report to the Commission, which consists of five appointed members who are private citizens. I have served as Executive Director since May 2003.

3. This declaration is based on my personal knowledge, including a review of records maintained by the Commission and data derived from those records. If called to testify, I could and would competently testify to these statements.

4. The Commission is the campaign finance agency for the State of Maine that administers and enforces all of Maine's campaign finance laws, as well as lobbyist registration and disclosure laws. It receives and monitors campaign finance reports filed by party

1

committees, candidate committees, political action committees (PACs) and ballot question committees.

5.      All entities that meet the statutory definition of a PAC under 21-A M.R.S.A. § 1052(5)—which, with some exceptions, includes entities other than candidates or parties that spend more than $2,500 in a calendar year to influence an election for state or county office—are required to file periodic reports with the Commission disclosing information about the PAC's activities during the reporting period, including information about contributions received and expenditures made. *See* 21-A M.R.S.A. § 1060. Candidates for state and county office and political parties are required to file similar reports. *See* 21-A M.R.S.A. §§ 1017; 1017-A. In addition, anyone who makes an independent expenditure (IE) over $250 is required to file a disclosure report on a schedule set forth in Commission rules.

6.      The Commission makes all of these reports available to the public at the website https://mainecampaignfinance.com/.

7.      At the request of counsel, I worked with Commission employees to compile data from these public campaign finance reports concerning trends in overall campaign spending since 2010 as well as information concerning PACs that have been active in Maine's last two general elections, in 2022 and 2024. I have carefully reviewed the data set forth below and believe it to be an accurate summary of data maintained by the Commission.

*Trends in Maine Campaign Spending, 2010–2024*

8.      We compiled data showing the amount of IE spending by PACs, as well as the amount of candidate contributions, in each election cycle since 2010. We separated out gubernatorial campaigns, which occur every four years and involve larger amounts of spending,

from all other state and county election spending. (The Commission does not regulate spending to influence federal elections.)

9. We also separated out spending by candidates participating in the Maine Clean Election Act (MCEA) program from spending by candidates accepting traditional campaign contributions ("trad." in the chart below), since candidates who receive MCEA funding are generally limited to spending only the public funds that are provided to them from the Maine Clean Election Fund, an amount that is capped by statute.

10. In the four gubernatorial races since 2010, the data show that IE spending by PACs in support or opposition to gubernatorial candidates has gone from $3,556,451 in 2010 to $13,651,412 in the 2022 election, a nearly fourfold increase. During the same period, spending by the campaigns themselves dropped, from $15,480,475 in 2010 to $8,465,788 in 2022. These elections varied in the number of candidates that ran in the primary and general election. The following chart, which shows PAC IE spending in orange and candidate spending in blue (traditional) and yellow (MCEA), summarizes the data:



11. In non-gubernatorial races during this period, candidates outspent PACs making IEs in each election. However, PAC IE spending roughly quadrupled during this time, going from $833,643 in 2010 to $3,531,727 in 2024. The chart below, with blue showing PAC IEs, and yellow and grey showing traditional and MCEA spending respectively by candidates, summarizes the data:



12. A true and correct copy of the data set used to create these tables is attached as Exhibit A.

*Recent PAC Spending in Maine*

13. Commission staff also looked in more detail at IE spending by PACs in the 2022 and 2024 elections.

14. In the 2022 election, there were 16 PACs registered with the Commission that made over $100,000 in IEs. Four of these PACs—Better Maine, Maine Families First, Maine Justice & Public Safety PAC, and Maine Strong—were single-candidate PACs in 2022, spending only to influence a single race. Another PAC, Maine Behind the Numbers, spent to influence

4

two races, with the remaining PACs reporting that they sought to influence between 13 and 69 races.

15. The 16 PACs collectively received $19,401,463 in contributions and spent $16,834,553 in IEs. These PACs collectively received 101 contributions of more than $5,000, ranging from $5,250 to $9,273,216. Forty-six of these contributions were for $25,000 or more, 23 were for $100,000 or more, and two were over $1 million.

16. In the 2024 election, which lacked a gubernatorial race, there were 8 PACs that made over $100,000 in IEs. These PACs reported seeking to influence between 10 and 59 races.

17. The 8 PACs collectively received $4,188,125 in contributions and spent $3,167,891 in IEs. These PACs collectively received 81 contributions of $5,000 or more, ranging from $5,103 to $600,000. Twenty-eight of these contributions were for $25,000 or more, and 10 were for $100,000 or more.

18. Tables showing the data supporting the above paragraphs are attached as Exhibit B.

*Examples of Recent PAC Activities in Maine*
*According to Filings with the Commission*

19. A PAC called Better Maine spent $9,221,777 on IEs to support a single candidate in the 2022 election, the Democratic candidate for Governor. Better Maine was funded in part by a $9,273,216 contribution from the Democratic Governors Association and a $101,001 contribution from the organization EMILY's List Maine.

20. A PAC called Maine Families First spent $2,896,310 on IEs to support a single candidate in the 2022 election, the Republican candidate for Governor. The PAC was funded solely by contributions from a single individual from New York.

21. A PAC called Maine Justice & Public Safety PAC spent $384,345 on IEs in a single district attorney race in 2022. The PAC was funded by contributions from a single entity. The two candidates in that race, Jonathan Sahrbeck and Jacqueline Sartoris, made expenditures in that race of $54,120.13 and $22,657.55 respectively.

22. A PAC called Rebuild Maine spent $244,855 on IEs to support various Democratic legislative candidates. The PAC's largest contributor, the advocacy organization Maine People's Alliance, contributed a total of $265,000 to the PAC during the 2022 election cycle.

23. Dinner Table Action PAC spent $267,929 on IEs in 2022 to influence 25 races. The PAC's largest contributor that year, an individual from Georgia, contributed $50,480 to the PAC during the 2022 election cycle, and the PAC had 5 other contributors who gave more than $5,000.

24. Dinner Table Action PAC spent $377,770.37 on IEs in 2024 to influence 10 races. The PAC's largest contributor that year, an entity, gave $100,000, and the PAC had 5 other contributors who gave more than $5,000.

25. In 2021–2022, according to Dinner Table Action PAC's reports filed with the Commission, $341,129.77 of the PAC's total contributions received of $502,114.77 were from contributors who gave $5,000 or less.

26. In 2023–2024, according to Dinner Table Action PAC's reports filed with the Commission, $274,880.76 of Dinner Table Action PAC's total contributions received of $519,810.76 were from contributors who gave $5,000 or less.

*Party IE Spending*

27.     I also directed Commission staff to calculate total IE spending by political party committees during the relevant periods.  Commission records show that party IEs have increased in years with gubernatorial elections but remained relatively flat in other years.  They also show party IEs in the two most recent elections are significantly below both PAC IEs and expenditures by candidates:

| Year | Total PAC IEs | Total Party IEs | Total Candidate Spending |
|------|---------------|-----------------|--------------------------|
| 2010 | $4,390,094.94 | $1,584,040.03 | $19,345,959.41 |
| 2012 | $1,607,278.62 | $1,762,801.10 | $3,483,002.48 |
| 2014 | $11,502,180.63 | $1,804,717.75 | $12,052,508.46 |
| 2016 | $1,483,275.20 | $1,650,535.65 | $4,711,066.67 |
| 2018 | $9,551,371.37 | $4,582,771.90 | $15,945,273.57 |
| 2020 | $1,354,811.62 | $1,532,604.07 | $5,354,458.66 |
| 2022 | $17,182,245.97 | $9,737,903.27 | $14,812,123.62 |
| 2024 | $3,531,727.89 | $1,885,380.74 | $5,570,632.75 |

*Interpretation of Disclosure Provision*

28.     Maine law requires anyone who makes an IE over $250 to report certain information about those IEs on a schedule set forth in Commission rules.  *See* 21-A M.R.S.A. § 1019-B(4).  Under those rules, all qualifying IEs made more than 60 days before the relevant election must be included in a report filed on the 60th day before the election.  Between the 60th day and the 14th day before the election, IEs must be reported within two calendar days of the expenditure.  And after the 14th day before the election, IEs must be reported within one day of the expenditure.  *See* 94-270 C.M.R. ch. 1, § 10(3).

29. The Act amends the provision of § 1019-B(4) describing the information that must be included in each IE report to add "an itemized account of the total contributions for each contributor." I.B. 5, § 3. The Act does not, however, alter the law's provision that an obligation to file a report is triggered only by the making of an IE of over $250.

30. Because contributions by themselves do not trigger a reporting obligation, Commission staff does not understand the Act to require reporting of contributions that have not yet been used for IEs. Rather, Commission staff's view is that the Act requires reporting of all contributions actually used to finance the IEs that are required to be disclosed in the IE report.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 14, 2025

/s/ Jonathan Wayne
JONATHAN WAYNE
Executive Director
Maine Commission on
Governmental Ethics and
Election Practices