**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE**

DINNER TABLE ACTION, *et al.*,

             Plaintiffs,

    v.

SCHNEIDER, *et al.*,

             Defendants,

Case No. 1:24-cv-00430-KFW

**REPLY IN SUPPORT OF EQUALCITIZENS, CARA MCCORMICK,
PETER MCCORMICK, AND RICHARD BENNETT'S
MOTION TO INTERVENE AS DEFENDANTS**

**INTRODUCTION**

Plaintiffs' challenge presents a question of first impression in the First Circuit and the U.S. Supreme Court: whether SuperPAC contribution limits are permissible under the First Amendment. Movants seek intervention to ensure that this Court and subsequent appellate courts have an adequate record—and complete legal analysis—to address that question. If intervention is denied, the record and analysis will be incomplete on appeal. The State has declined to press an independent originalist defense of the Act. *See* State Br. 14. Movants would. Movants would also offer declarations from two leading constitutional historians, Jack Rakove and Jonathan Gienapp. And they would introduce empirical evidence to inform the Court's understanding of whether and when unlimited SuperPAC contributions create an appearance of corruption. Amicus participation would not suffice: It would not enable Movants to preserve this important defense, nor would it allow Movants to submit all of this record evidence (something both Plaintiffs and the State expressly acknowledge). A defense of the Act would be severely compromised without the record material and legal analysis Movants seek to present to this Court, warranting intervention.

Movants, moreover, have unique interests in the validity of the Act as its primary supporters and beneficiaries. There are serious concerns regarding the Maine Attorney General's ability to represent those interests, not in the least because the Attorney General is appointed by the same legislature that *refused* to adopt the Act. This important constitutional case should be litigated without any doubts about adequacy of representation, further justifying intervention.

**ARGUMENT**

I.    **The Court Should Grant Intervention As-Of-Right.**

A.    **The State's Participation Is Inadequate.**

Movants' interests and those of the State diverge in three key respects, each sufficient to overcome the presumption of adequate representation. *First*, Movants intend to present a robust

1

originalist defense of the Act. Under Supreme Court precedent, contribution limits survive scrutiny if they are "closely drawn" to serve a "sufficiently important interest." *Davis v. F.E.C.*, 554 U.S. 724, 740 n.7 (2008). Founding-era history—and the Constitution's text—demonstrate that Maine has a sufficiently important interest in preventing "dependence corruption," the improper dependence of public officials on deep-pocket interests rather than their own constituents, and that the Act is closely drawn to address this interest. Movants' brief will present this argument, along with a deep historical and originalist analysis to support it, whereas the State's brief acknowledges it in passing. This argument is crucial for the Court to consider because it provides an independent basis for denying the injunction, even if the Court finds no risk of *quid pro quo* corruption.

The State agrees (at 14) that this defense is both independent and valuable. But it neither presents the argument nor develops a record to sustain it. This is not a case where a putative intervenor offers a "subtle difference[] in approach or rationale," *Students for Fair Admission, Inc. v. President and Fellows of Harvard College*, 308 F.R.D. 39, 50 (D. Mass 2015), or where they merely seek to analogize a body of relevant caselaw. *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021).[1] The Court is instead presented with the situation contemplated by the First Circuit in *Daggett v. Commission on Governmental Ethics and Election Practices*, where the State's "refusal to present obvious arguments" should "justify a finding that representation by the existing party [i]s inadequate." 172 F.3d 104, 112 (1st Cir. 1999); *see also Cotter v. Massachusetts Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 36 (1st Cir. 2000) (intervention appropriate based on movant's distinct "line of defense"). Indeed, the Supreme Court has emphasized the need to "appl[y] the Constitution by examining text, pre-ratification and post-ratification history, and precedent." *United States v. Rahimi*, 602 U.S. 680, 714 (2024) (Kavanaugh, J. concurring); *New*

---

[1] The additional arguments at issue in *Victim Rights Law Center* were entirely cumulative—the putative intervenors wanted to add analogies to First and Fifth Amendment caselaw. *Id*. at 559.

2

*York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 23 (2022). The centrality of a historical approach to the constitutional questions at issue here "obviously calls for" Movants' defense to be presented. *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 807 F.3d 472, 476 (1st Cir. 2015). The State's request to "fully present" this defense in the event intervention is denied (at 14) only underscores its importance.

*Second*, Movants' "interests are sufficiently different in kind or degree from those of the named party." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 546 (1st Cir. 2006). Intervenors seek to defend a ballot initiative that they proposed, which the Legislature refused to enact, and which the Governor did not support. Courts routinely grant as-of-right intervention where circumstances such as these indicate a government entity will "shirk" a full-throated merits defense. *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66, 70 (D. Me. 2007). Plaintiffs cite *Victim Rights Law Center*, but two decisions from this district have granted intervention on this basis *after* that decision. *See Old Orchard Provisions, LLC v. Town of Old Orchard Beach*, No. 23-CV-00272, 2023 WL 8540917, at *4 (D. Me. Dec. 11, 2023) (government representation inadequate because "leadership disfavor[ed] the [challenged] amendment") (citing *Victim Rts. L. Ctr.*, 988 F.3d at 561); *Ass'n to Pres. & Protect Loc. Livelihoods v. Town of Bar Harbor*, No. 22-CV-00416, 2023 WL 2273949 at *3 (D. Me. Feb. 28, 2023).

*Third*, Movants intend to submit crucial evidence demonstrating that the Act is closely drawn to address the State's interests in combatting *quid pro quo* and dependence corruption. This evidence will include two declarations by well-known scholars who have researched the historical justifications for contributions limits, and a third declaration with detailed analysis of survey data showing that Americans view the Act's $5,000 contribution limit as significantly decreasing the risk of corruption—a crucial question for this Court. Pls' Br. 1; State Br. 6. The State has not

submitted comparable evidence, and this record gap needs to be addressed. In *McConnell v. FEC*, 540 U.S. 93 (2003), the record included over 100,000 pages of documents, depositions, expert reports, and other evidentiary materials. Such material was closely analyzed by the Supreme Court in its 300-plus-page decision, *see id*. at 145 (noting that "the ample record" confirmed Congress's belief that "contributions to national party committees have a corrupting influence"), demonstrating the importance of this record material and the need for Movants to present such material as intervenors. Plaintiffs may seek to depose Movants' experts, moreover, which is further reason to grant Movants intervenor status. *See* Fed. R. Civ. P. 30. Notably, Plaintiffs have informed Movants that they oppose intervention because Movants should not be allowed to submit this record evidence even as amici, an argument that augurs in strong favor of intervention. *See* Ex. 1.

### B.    Amicus Status Will Not Suffice.

Intervenor status is necessary to preserve the originalist case for Maine's law. Arguments raised only by an amicus—and rejected by the parties—are not before the court. *See Knetsch v. United States*, 364 U.S. 361, 370 (1960) (declining to entertain argument advanced by "an amicus brief" but not "petitioners"); *Eldred v. Reno*, 239 F.3d 372, 378 (D.C. Cir. 2001) (similar). This is not a situation, moreover, in which Movants' legal theories are "easily presented in amicus briefs." *Mass. Food Assoc. v. Mass. Alcoholic Beverages Control Comm'n.*, 197 F.3d 560, 567 (1st Cir. 1999). Movants seek to submit crucial evidence to the record, *supra* pp. 3–4, and to present a detailed historical and originalist analysis—which goes far beyond the scope of amicus participation. An amicus brief thus would not "do the job." *Daggett*, 172 F.3d at 112. If Movants are required to participate as amici, moreover, it will hamper Movants' ability to participate on appeal to the First Circuit, where "amicus briefs are shorter than regular briefs and oral argument is at the court's discretion." *Mass. Alcoholic Beverages Control Com'n*, 197 F.3d at 567.

### C.    Intervenors Each Have A Significant, Protectable Stake In The Litigation.

Each Movant has a discrete, significant interest beyond a generalized concern that Maine enforce the Act. Plaintiffs (at 2-3) principally take issue with EqualCitizens, casting it as any other public-interest group.[2] Not so. EqualCitizens organized the campaign for the Act's passage in support of its mission to establish the validity of contribution limits to combat the risk of SuperPAC corruption. *Id*. ¶¶ 6, 7, 9. If the initiative is struck down, Equal Citizens will expend resources to combat corruption in Maine, instead of deploying those resources elsewhere. Lessig Decl. ¶ 13. Plaintiffs nowhere answer this point made in the motion and do not contest that it constitutes a legally protectable interest. *See* Mot. 6; *see also Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997) (reversing denial of intervention to group that was a "vital participant in the political process" and "a repeat player in Campaign Finance Act litigation").

Cara McCormick, Peter McCormick, and Senator Bennett's distinct interests support intervention, too. Cara and Peter McCormick "submitted [the] petition" and "spearheaded the campaign to secure [it] a position on the ballot." Cara McCormick Decl. ¶¶ 4, 7. Far from the "ordinary run of citizens," Opp. 4, they are the *only* individuals who can say that they are the primary supporters of the challenged law. That status gives them a personal stake, and denying intervention would conflict with other courts. *See Prete v. Bradbury*, 438 F.3d 949, 955 (9th Cir. 2006) ("chief petitioner for the measure" at issue had a "significant protectable interest" in the action); *Ass'n to Pres. & Protect Loc. Livelihoods v. Town of Bar Harbor*, No. 22-CV-00416, 2023 WL 2273949, at *3 (D. Me. Feb. 28, 2023) (granting as-of-right intervention to principal proponent of local ordinance because he had a "personal stake"). Their "persistent record of advocacy" is sufficient even if they have "little economic interest" in the Act itself. *Coal. of Arizona/New*

---

[2] Movants' filings make clear that Equal Citizens Foundation is the relevant corporate entity. Corporate Disclosure Statement, Dkt. No. 18.

*Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996).

Senator Bennett has a personal interest as a state legislator bound to represent Maine citizens, not anonymous donors. The presence of unlimited SuperPAC contributions causes candidates to avoid the Maine Clean Election Act framework and causes elected officials in Maine to "flinch in the performance of their duties"—ultimately impacting Senator Bennett's ability to effectively represent Mainers as part of the Legislature. Bennett Decl. ¶¶ 4, 7. He is thus one of the Act's "direct and intended beneficiaries." *Verizon New England v. Maine Pub. Utils. Comm'n*, 229 F.R.D. 335, 337 (D. Me. 2005); Mot. 5. And his distinct interest as a state legislator separately supports intervention. *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095, 2013 WL 6511874, at *4–5 (D. Kan. Dec. 12, 2013) (permitting state senator to intervene in defense of vote-by-mail statute based on interest in "protect[ing]" voting rights). Each Movant has thus separately and independently demonstrated that this Court should grant intervention as-of-right.

## D. The Motion Is Timely.

Intervenors' motion is timely because it comes at the very early stages of this case and before any discovery. *R & G Mortg. Corp. v. Fed. Home Loan Morag. Corp*., 584 F.3d 1, 7 (1st Cir. 2009) (early stage of litigation is "highly relevant"). Movants had no notice of this litigation and were not served. *Contra* Opp. 5. The fact that Movants prepared their papers in a roughly month-long period that included Christmas and New Years favors reasonableness even in this expedited posture. Plaintiffs cite no similar cases finding intervention untimely within such a short timeframe. As Counsel explained at the February 11, 2025, conference, Movants are committed to keeping this case on track. This brief has been filed on an abbreviated timeline to ensure intervention is resolved—and merits briefing completed—before a March hearing. And Movants will not seek discovery beyond what the State requests. Therefore, no prejudice will result.

6

## II.    In The Alternative, The Court Should Grant Permissive Intervention.

The Court has wide discretion to permit intervention where Movants' defenses present common questions of law or fact with those in the action. Fed. R. Civ. P. 24(b); Mot. 9.[3] Plaintiffs do not address the additional reasons permissive intervention would be appropriate, including the value of movants' insight and the benefit of developing a record on complex constitutional issues, particularly for the First Circuit and Supreme Court. Mot. 8–9. The Court can grant intervention on that basis without addressing whether Movants "are entitled to intervention as of right." *Penobscot Nation v. Mills*, No. 12-CV-254, 2013 WL 3098042, at *5 (D. Me. June 18, 2013).

Plaintiffs have indicated to Movants that they oppose intervention regardless of the conditions imposed by this Court. *See* Ex. 1. But the Court plainly may place reasonable conditions on intervention to prevent any possible prejudice. *See* Fed. R. Civ. P. 24, 1966 advisory committee notes. The Court may place guardrails on discovery, *see Bibles v. City Of Irving*, No. 08-CV-1795, 2009 WL 2252510, at *5 (N.D. Tex. July 28, 2009); require Movants to abide by the same filing deadlines as Defendants, *see Nat'l Pork Producers Council v. Ross*, No. 19-CV-02324, 2020 WL 13539067, at *1 (S.D. Cal. Jan. 9, 2020); and ensure that Movants have separate page and argument limits so that their participation does not impact the parties' advocacy, *see Pac. Rivers v. United States Bureau of Land Mgmt.*, No. 6:16-CV-01598, 2016 WL 11047279, at *2 (D. Or. Nov. 3, 2016).  Movants maintain that their participation in no way prejudices any of the existing parties.

### CONCLUSION

For the foregoing reasons, this Court should grant the motion to intervene.[4]

---

[3] Plaintiffs' citation (at 6) to *In re Thompson*, 965 F.2d 1136 (1st Cir. 1992) regarding the standard of permissive intervention is "pure dicta" as the appeal was dismissed on jurisdictional grounds and the relevant party "had not even formally moved to intervene." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 61 (1st Cir. 2017) (discussing *In re Thompson*). The only "threshold requirement" is that movants share common claims or defenses with the named parties. *Daggett*, 172 F.3d 113.

[4] Should the Court have any concerns about intervention, Movants respectfully request oral argument.

Respectfully submitted,

Ezra P. Louvis*
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, DC 20004
Tel: (202) 637-5600
ezra.louvis@hoganlovells.com

*/s/ David M. Kallin*
David M. Kallin, Bar No. 4558
Adam R. Cote, Bar No. 9213
DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME 04101-2480
Tel: (202) 772-1941
dkallin@dwmlaw.com
acote@dwmlaw.com

Neal Kumar Katyal*
MILBANK LLP
1850 K St. N.W.
Washington, DC 20006
Tel: (202) 835-7500
nkatyal@milbank.com

* *pro hac vice*

*Counsel for Rick Bennett, Cara McCormick, Peter McCormick, and EqualCitizens*

February 18, 2025